UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11024-RWZ

METROPLEX PATHOLOGY ASSOCIATES and
MIRACA LIFE SCIENCES, INC.

v.

THOMAS HORN, M.D., LISA M. COHEN, M.D., and
MGPO DERMATOPATHOLOGY ASSOCIATES

MEMORANDUM OF DECISION

January 2, 2013

ZOBEL, D.J.

Plaintiffs Metroplex Pathology Associates ("Metroplex") and Miraca Life Sciences, Inc. ("Miraca") filed this action against former employees, Thomas Horn, M.D. ("Horn") and Lisa M. Cohen, M.D. ("Cohen"), and their current employer MGPO Dermatopathology Associates ("MDA"), for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, unfair practices in violation of M.G.L. c. 93A, and civil conspiracy.

Before the court now are several motions: (a) plaintiffs' motion for a preliminary injunction restricting defendants from engaging in certain activities, including using or disclosing plaintiffs' confidential information, soliciting or attempting to solicit plaintiffs' clients, and hiring and employing former and current employees of plaintiffs (Docket # 2); (b) defendant Cohen's motion to seal several documents previously filed by plaintiffs (Docket # 14); and (c) defendant MDA's motion to stay proceedings pending

arbitration between plaintiffs and the individual defendants (Docket # 31).

**I. Background**

    **A. Cohen Dermatopathology**

Plaintiff Miraca owns and operates Cohen Dermatopathology, P.C. ("Cohen Dermatopathology"), which its predecessor purchased from Cohen and Dr. Lisa Lerner ("Lerner").[1] Cohen Dermatopathology is comprised of specialists who review and analyze biopsies and skin specimens. Its clients are physicians, dermatologists, plastic surgeons and medical group practices who send biopsies to Cohen Dermatopathology laboratories for review. None of the dermatopathologists have any direct dealings with patients, and Cohen Dermatopathology does not solicit patients directly but rather seeks to attract and retain business from a network of referring physicians. Miraca asserts that it invests significant time and resources in growing relationships with referrers and treats the identity of those referrers as confidential information.

    **B. Employment Agreements**

As part of, and ancillary to, the sale of her business, Cohen entered into an employment agreement with Cohen Dermatopathology on May 31, 2007, wherein she agreed to "hold in strictest confidence and not disclose, use, provide access to, copy or publish" any confidential information, including the identity of customers and personnel as well as company business and marketing plans, for a period of five years after the

---

[1] Cohen started Cohen Dermatopathology in 1997 and was later joined by Lerner and Horn. In May 2007, Caris Diagnostics, Inc. ("Caris") purchased Cohen Dermatopathology from Cohen and Lerner. (In their opposition, defendants use Cohen Dermatopathology and Caris interchangeably to refer to defendant doctors' former employer). In November 2011, Caris was acquired by Miraca, a Delaware corporation registered to do business in Massachusetts. Miraca is also the sole shareholder of Metroplex, a professional corporation organized and headquartered in Texas.

termination of the employment agreement. Docket # 4-1, § 8.4.1-3. The agreement also included a non-competition provision precluding Cohen from "directly or indirectly, tak[ing] any action that results or may reasonably be expected to result in owning any interest in, leasing, operating, managing, extending credit to, or otherwise participating in the business (including without limitation, as a medical director, contractor, or consultant) of a Competitor in the Restricted Area" for two years following termination of the agreement. Id. § 13.2. However, the provision did not prohibit Cohen "from being employed on a salaried basis to review and interpret slides without any other duties or responsibilities of any nature or kind." Id. Cohen further agreed not to solicit Cohen Dermatopathology's employees and clients or criticize, denigrate, or disparage the company for two years after termination of the agreement. Id. § 13.3.[2]

Horn also had an employment agreement with Cohen Dermatopathology, effective June 25, 2007. Horn acknowledged that the identities of the company's referring physicians were to be considered confidential information and agreed that "both during and following his employment he shall not, for any purpose whatsoever, directly or indirectly, divulge or disclose to any person or entity any such confidential information." Docket # 4-3, § 8. He further agreed that, for one year following the termination of the agreement, he would not "attempt to persuade, induce, solicit, encourage or otherwise suggest that employees of, vendors with, or referrers to [Cohen Dermatopathology] terminate their relationship with [Cohen Dermatopathology]" nor

---

[2] Lerner, who is not a party in this action, executed an employment agreement with Cohen Dermatopathology with substantially identical terms.

hire, directly or indirectly, any of the company's employees. Id. § 10.4.

Plaintiffs assert that on or about January 2010, Metroplex was assigned Horn's and Cohen's respective employment agreements with Cohen Dermatopathology. Cohen and Horn claim no knowledge of the alleged assignment and state that they have not had any involvement with Metroplex.

### C. MGPO Dermatopathology Associates ("MDA")

In 2008, Massachusetts General Hospital ("MGH") decided to start a dermatopathology outreach laboratory (what would eventually become MDA) to serve dermatologists and other specialists outside the hospital who require high level tissue analysis as part of their treatment of patients. After several years of planning and working with consultants, the hospital was ready to launch the new lab in late 2011. From November 2010 through April 2011, MGH posted job advertisements in numerous professional publications, primarily for the position of MDA's Medical Director.

Cohen, Horn, and Lerner grew increasingly dissatisfied with the operation and management of Cohen Dermatopathology, and in late winter and early spring of 2011, all three doctors were thinking about leaving to join MDA. While she did not choose to make a move at that time, Cohen ended her employment with Cohen Dermatopathology and took five months off to spend time with family and contemplate her next steps.[3] In the meantime, Horn applied for and was offered the Medical Director position at MDA. Horn accepted the position in late June 2011 and gave

---

[3] Cohen submitted notice on March 14, 2011, and her employment agreement officially terminated on July 12, 2011.

4

notice to Cohen Dermatopathology on July 1, 2011. His employment agreement officially terminated on October 28, 2011, at which point he began working for MDA. By mid-summer 2011, Cohen had decided to return to practice and interviewed at several dermatopathology labs. She accepted a position with MDA and started work on November 1, 2011. Lerner followed suit, giving her notice on January 27, 2012 and accepting a position at MDA on April 2, 2012.[4]

Plaintiffs accuse Horn and Cohen, along with MDA, of operating a new dermatopathology practice in breach of the confidentiality, non-solicitation, non-competition, and non-disparagement provisions in their respective contracts. They allege that defendants conspired to unfairly establish a competing entity against Cohen Dermatopathology through use of confidential information and solicitation of its clients and employees. Plaintiffs claim that Horn and MDA have wrongly hired Cohen and Lerner, as well as Horn's former administrative assistant Patricia Riley and Cohen Dermatopathology's top transcriptionist Mirna Rodriguez, and attempted to hire away another employee, forcing plaintiffs to increase her compensation package to retain her. Finally, plaintiffs contend that MDA is improperly using Horn's and Cohen's names, images, and biographical information on its marketing and promotional materials and is directly soliciting Cohen Dermatopathology's clients using confidential information provided by Horn and/or Cohen.

Defendants vigorously disavow any breach or wrongdoing. Cohen and Horn

---

[4] Lerner had not yet begun working at MDA at the time the parties filed their briefs on the preliminary injunction issue.

deny soliciting each other or Lerner to leave Cohen Dermatopathology for MDA. Horn insists that he did not even know that Cohen had decided to return to practice and join MDA until the hire was announced, and that he only learned of Lerner's decision to join MDA from other physicians at MGH. The two staff persons hired by MDA also deny that they were ever solicited by Horn or Cohen; instead, they state that they were unhappy at Cohen Dermatopathology and responded to job postings for MDA administrative positions on their own initiative.[5]

Defendants also contend that Cohen's and Horn's work at MDA does not run afoul of their employment agreements with Cohen Dermatopathology. Both doctors explained the restrictions in the agreements to MDA, which agreed to limit their roles until those restrictions expired. Accordingly, defendants claim, Cohen has played no role in the operation or management of MDA, and her responsibilities have been limited to reviewing and interpreting slides. Neither doctor has been involved in marketing or solicitation of clients. Rather, MDA's sales/marketing employee, Mary Ellen Graves, makes sales calls on physicians using a "prospect list" she constructed from the American Academy of Dermatology website. Graves, who does not report to or interact with Horn or Cohen about marketing, maintains that she has never been given any names by defendant doctors and has never suggested to prospective clients that they should terminate their relationship with Cohen Dermatopathology. MDA's alleged "use" of Horn and Cohen in its marketing has been limited to the inclusion of Horn's

---

[5] Neither Patricia Riley not Mirna Rodriguez was under any agreement with Cohen Dermatopathology that restricted her ability to leave and work elsewhere.

photograph and past affiliation with Caris in a brochure and the listing of both doctors on MGH's website, where all the hospital's physicians are listed.

## II. Discussion

### A. Preliminary Injunction

Plaintiffs request a preliminary injunction restraining Horn and Cohen from violating the various restrictions in their employment agreements. Plaintiffs also seek to enjoin MDA from continuing to employ Cohen Dermatopathology's former employees (including Riley, Rodriguez, Cohen, and Lerner), using any confidential information obtained from those employees, and soliciting Cohen Dermatopathology's clients to terminate their relationship with plaintiffs.

To obtain preliminary injunction relief under Fed. R. Civ. P. 65, plaintiffs "bear the burden of demonstrating (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

Plaintiffs have failed to show a likelihood of success on their claims. There is little evidence, if any, that Horn or Cohen have violated any restrictive provision of their

employment agreements with Cohen Dermatopathology.[6] On the current record, plaintiffs have not established any instance of either doctor disclosing or using confidential information obtained from Cohen Dermatopathology or soliciting any of Cohen Dermatopathology's employees or clients. Nor have they shown that Cohen has disparaged her former employer or engaged in any activities at MDA prohibited by her employment agreement, which expressly permits her to work on a salaried basis to review and interpret slides. Moreover, the very validity of the non-competition and non-solicitation provisions is in doubt since M.G.L. c. 112, § 12X renders void and unenforceable "any restriction of the right of [a physician] to practice medicine in any geographic area for any period of time after the termination" of an employment relationship.[6]

Plaintiffs' allegations against MDA are similarly tenuous. Beyond making broad and speculative accusations, plaintiffs have not demonstrated that MDA intentionally interfered in any way with Cohen Dermatopathology's contractual relationships with Horn and Cohen. If anything, the evidence produced at this early stage in the litigation suggests that MDA has been especially scrupulous in dealing with defendant doctors' employment agreements and has taken appropriate measures to ensure adherence to the restrictions therein. Plaintiffs have presented no proof supporting their contention

---

[6] Defendants also question plaintiffs' standing to enforce the agreements, noting that it is unclear whether specific contractual requirements were followed in the alleged assignments to Metroplex in 2010.

[6] Plaintiffs argue that M.G.L. c. 112, § 12X applies only to physicians who deal directly with patients, not to doctors like Cohen and Horn, who work in a lab analyzing biopsies and tissue slides. The language of the statute, however, contains no such limitations, and plaintiffs have cited no case law espousing their view.

8

that Cohen Dermatopathology has lost clients or business as a result of MDA's actions. Furthermore, there is no sign of any civil conspiracy between MDA and the doctors to establish and open a direct competitor of Cohen Dermatopathology; plans for the new lab were hatched long before either Horn or Cohen joined MDA, and each doctor made a separate and personal decision to work there.

Because plaintiffs have not shown that they are likely to prevail on the merits of their claims, I need not discuss the remaining factors. The motion for preliminary injunction is denied in its entirety.[7]

### B. Motion to Seal

Cohen requests that certain documents previously filed by plaintiffs – the complaint, plaintiffs' motion for a preliminary injunction, and memorandum and affidavit in support of that motion – be sealed and impounded. She claims that these documents contain information concerning the sale of Cohen Dermatopathology, specifically the purchase price and the proceeds received by the shareholders, that is not and should not be in the public record. As plaintiffs point out, however, there is nothing in the purchase agreement that precludes them from choosing to disclose any and all information about the transaction, and Cohen does not contend that disclosure of such information would cause her, or anyone else, any harm. Accordingly, Cohen has not demonstrated "good cause" to seal the documents, and her motion is denied. See Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc., No. 07-11444,

---

[7] Some of the restrictions sought by plaintiffs expired on October 28, 2012, and are therefore also moot.

2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) ("Demonstrating 'good cause' entails making a particularized factual showing of the harm that would be sustained if the court did not allow the filing under seal.").

### C. Motion to Stay Proceedings[8]

MDA moves to stay proceedings against it, including staying its obligation to answer, move, or otherwise respond to the complaint, pending the outcome of mandatory arbitrations between plaintiffs and the individual defendants.[9]  Although MDA is not a party to the arbitrations, there is substantial overlap in the issues concerning all defendants, and the decisions of the arbitrators regarding the claims against Horn and Cohen will likely be relevant to, and perhaps dispositive of, the claims against MDA.  In the interest of judicial economy, a stay of proceedings against MDA is appropriate in this case.  See Marquis v. FDIC, 965 F.2d 1148, 1154-55 (1st Cir. 1992).

## III. Conclusion

Plaintiffs' motion for a preliminary injunction (Docket # 2) is DENIED.  Defendant Cohen's motion to seal (Docket # 14) is DENIED.  Defendant MDA's motions to stay proceedings and for leave to file a reply brief in support thereof (Docket ## 31 and 36) are ALLOWED.

---

[8] Plaintiffs filed an opposition to MDA's stay motion, and MDA moved for leave to file a reply brief.  That motion (Docket # 36) is allowed.

[9] All the claims asserted against Horn and Cohen arise out of employment agreements which provide for mandatory arbitration of such claims.  Proceedings in this court against Horn and Cohen were stayed on July 27, 2012, pending the conclusion of arbitration.

| | |
|---|---|
| <u>   January 2, 2013   </u><br>DATE | <u>   /s/Rya W. Zobel   </u><br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |